# STATE OF CONNECTICUT *v.* WILLIAM P. MORRISSETTE, JR.
## (AC 28709)

Gruendel, Lavine and Foti, Js.

Argued November 27, 2007—officially released February 12, 2008

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Michael L. Regan,* state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, William P. Morrissette, Jr., appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), arson in the first degree in violation of General Statutes § 53a-111 (a) (4), arson in the second degree in violation of General Statutes § 53a-112 (a) (1) (B) and tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1). On appeal, the defendant claims that the trial court improperly restricted from evidence testimony supporting the defendant's third party culpability claim. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant and his family lived in the same trailer park as the victim, Jack Barthelomy. The victim was the defendant's neighbor, and the defendant parked one of his cars on the victim's property. Also living with the defendant was his friend, William Lee, an African-American man. On September 19, 1997, the defendant, his wife and Lee were in the defendant's trailer, drinking wine. According to Lee, the defendant said that he was going to the victim's trailer because the victim had money and the defendant wanted some of it. The defendant then left his trailer. A while later, in response to a request from the defendant's wife, Lee left the defendant's trailer to look for the defendant. Standing outside with a view of the victim's trailer, Lee saw the defendant inside the victim's trailer pacing back and forth. Lee called to the defendant, and the defendant left the trailer carrying a white plastic shopping bag.

Lee testified that the defendant told him that he gave the victim "a good whipping" but that the victim was okay. Lee could not see what was inside the bag, but the defendant told him it was $60 to $70 worth of pennies and a computer keyboard. The defendant left the bag outside his trailer and left the trailer park. He returned early the next morning but left again and was not seen by Lee at the trailer park until the early morning of September 22, 1997, when Lee awoke to the defendant's presence in the defendant's trailer. Lee further testified that he had never met the victim.

At 5 a.m. on September 22, 1997, around the time the defendant came back to his trailer, firefighters responded to a fire in the victim's trailer. While putting out the fire, firefighters found the body of the victim. An autopsy later revealed that the victim's death was not caused by the fire but, rather, was caused by significant blunt trauma to the right side of his neck. An investigation of the fire revealed that it was set intentionally, and the police eventually arrested the defendant for the crimes committed.

During his trial, the defendant sought to establish a third party culpability defense that Lee, and not the defendant, was the perpetrator of the crimes. The defendant sought to develop his defense through several witnesses, including Lee; Charles Doolittle, the then owner of a package store that the victim and Lee had frequented prior to the victim's death; and Anne Cushman, a woman who had allowed Lee to live with her and her family prior to Lee's moving in with the defendant.

The court heard a proffer of a portion of Cushman's testimony from defense counsel. Part of Cushman's testimony was that immediately prior to living with the defendant, Lee lived with Cushman and her family in their trailer home. About one month after living in Cushman's home, Cushman discovered that Lee was stealing

from her and using the money to buy alcohol and illicit substances. Cushman confronted Lee, told him he would have to leave and put his belongings on the front lawn. While Lee was removing his belongings from Cushman's lawn, the two were arguing, and Lee told Cushman, "you had better shut the fuck up or I'm going to come back here and, in the middle of the night, burn down your trailer and kill all of you motherfuckers."

The court also heard a proffer of testimony from Doolittle. Doolittle's proffered testimony was that in 1997, he was the owner of Kathy's Packy and Liquor Store and that he knew the victim as a customer. Just about every other day the victim would visit his store and would purchase a 1.75 liter bottle of Majorska vodka and three packs of Salem cigarettes. At some time during August and September, 1997, Doolittle sold Majorska vodka and Salem cigarettes to an African-American man who was approximately thirty years old and had dreadlocks or corn rows. Doolittle specifically asked the man if he was making a "packy run" for the victim, and the man indicated that he was. The man purchased the items for the victim a few times. Further, when Doolittle testified before the jury, he testified that the man who purchased the items for the victim would leave the liquor store on foot in the direction of the trailer park in which the victim lived. Doolittle also testified that no other African-American individuals lived in this neighborhood.

The court allowed the defendant to elicit the testimony of Doolittle that tended to show that Lee knew the victim and, as such, discredited Lee's testimony that he had never met the victim. The court, however, ruled that the portion of Cushman's proffered testimony in which she indicated that Lee had stolen from her to buy alcohol and illicit substances and threatened to burn down her trailer with her and her family in it was inadmissible to show third party culpability, as it failed

to connect directly Lee to the crimes committed against the victim.[1] On appeal, the defendant claims that the court improperly excluded this portion of Cushman's testimony, as it would have supported his theory that Lee had committed the crimes with which the defendant had been charged.

"We begin our analysis of the defendant's claim by setting forth the applicable legal principles. The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded. . . .

"We have recognized consistently that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. . . . The defendant must, however, present evidence that

---

[1] The court did permit the defendant to call Cushman as a witness to testify that Lee had lived with her and her family prior to Lee's living with the Morrissettes and allowed Cushman to testify as to Lee's reputation for truth and veracity.

directly connects a third party to the crime . . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . .

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . We previously have stated that [r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Finally, [t]he trial court's ruling on the relevancy of third party inculpatory evidence will be reversed on appeal only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 624–26, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

The defendant argues that Cushman's proffered testimony would have established Lee's motive and opportunity and that, when considered in conjunction with Doolittle's testimony, would have provided sufficient circumstantial evidence connecting Lee to the crimes with which the defendant had been charged. As the state points out, however, Cushman's proffered testimony had a tendency to show only Lee's purported

propensity to steal, issue threats and commit arson. The alleged threat to Cushman and the alleged larceny of her property in no way established a motive or opportunity for Lee to commit the same crimes against the victim. As the court pointed out, "if Mr. Lee had told Ms. Cushman that Mr. Lee was going to burn down [the victim's] trailer for some reason, that would probably be enough for . . . the jury to hear it." That, however, was not the case. There was no proffered evidence of a direct connection, indeed any connection, between the crimes committed against the victim and any dealings Lee may have had with Cushman. The threat and alleged misconduct arose under different circumstances and were directed at a person other than the victim. See *State* v. *Hernandez*, 224 Conn. 196, 203, 618 A.2d 494 (1992) (court did not abuse discretion in failing to admit evidence that state's witness had threatened to kill former girlfriend and her family ten months after murder of victim, as court reasonably could have determined proffered evidence too remote in time from murder, circumstances factually dissimilar and evidence did not directly connect witness to murder). For these reasons, the court did not abuse its discretion in failing to admit Cushman's proffered testimony into evidence. Furthermore, no injustice was done because the defendant was allowed to develop his defense, including Lee's motive and opportunity to commit the crimes, through Lee and Doolittle.

The judgment is affirmed.

In this opinion the other judges concurred.