******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DONALD G. *v.* COMMISSIONER OF CORRECTION*
## (AC 42713)

Prescott, Elgo and Pavia, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree, sexual assault in the third degree, and three counts of risk of injury to a child, sought a writ of habeas corpus, claiming that his trial counsel rendered ineffective assistance. The petitioner claimed, inter alia, that counsel failed to present testimony from four witnesses, his mother, his stepfather and two family friends, about his alleged presence or absence from a December, 2007 holiday party at which certain of his alleged criminal conduct occurred. Those same four witnesses testified at his criminal trial that they had not seen him at a 2008 holiday party, and the petitioner was acquitted of sexual assault charges stemming from allegations regarding that date. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner failed to establish his claim that trial counsel's decision to refrain from questioning witnesses regarding his attendance at an event on a certain date in 2007 constituted deficient performance; the petitioner presented no evidence at the habeas trial that anyone except his parents would have attested to his absence from the 2007 party, and trial counsel's strategic decision not to question the petitioner's parents about his whereabouts at the December, 2007 holiday party was not objectively unreasonable, as the jury could have deemed them to be biased witnesses seeking to protect their son, especially in light of contradictory evidence at the criminal trial that the petitioner had told a police officer that he had been present at the December, 2007 holiday party.

2. The habeas court properly determined that the petitioner failed to demonstrate that he was prejudiced by any deficient performance of his trial counsel in referring to the complaining witness as the "victim" or by failing to object or to request a curative instruction regarding the prosecutor's use of the same; although both the state and trial counsel inappropriately referred to the complainant as the victim, neither did so consistently, and there was no support for the petitioner's assertion that, but for the use of the word victim, there was a reasonable likelihood that the outcome of the trial would have been different, especially in light of the fact that the petitioner was acquitted of one of the charges.

3. The habeas court properly determined that the petitioner's trial counsel did not render ineffective assistance by failing to investigate a claim of uncharged misconduct between the petitioner and the victim; trial counsel testified that the petitioner admitted to having attended a ski trip where the uncharged misconduct was alleged to have occurred and, thus, trial counsel's decision not to pursue a witness who purportedly would have testified that she did not see the petitioner on the ski trip could not be deemed unreasonable or tactically unsound.

Argued October 13, 2020—officially released March 2, 2021

*Procedural History*

Amended petition for writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Kwak, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Donald G.*, self-represented, the appellant (petitioner).

*Linda F. Currie-Zeffiro*, senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*,

state's attorney, and *Angela Macchiarulo* and *Michael Proto*, senior assistant state's attorneys, for the appellee (respondent).

*Opinion*

PAVIA, J. Following the granting of certification to appeal by the habeas court, the petitioner, Donald G., appeals from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly rejected his claim that his right to effective assistance of counsel had been violated because his trial counsel (1) neglected to present testimony regarding the petitioner's whereabouts for one of the nights in question, (2) referenced the complainant as the "victim" and failed to object or to request a curative instruction when the prosecutor also referred to the complainant as the "victim," and (3) failed to investigate properly an incident of uncharged misconduct.[1] We disagree and affirm the judgment of the habeas court.

The petitioner was convicted of sexual assault in the first degree, sexual assault in the third degree and three counts of risk of injury to a child. The judgment of conviction for those crimes was affirmed on direct appeal by this court, and our Supreme Court denied his subsequent petition for certification to appeal. See *State* v. *Donald H. G.*, 148 Conn. App. 398, 84 A.3d 1216, cert. denied, 311 Conn. 951, 111 A.3d 881 (2014). The following facts, as set forth by this court in *State* v. *Donald H. G.*, supra, 400–404, are relevant to the petitioner's appeal.

"The minor victim, who was born in October, 1992, is the niece of the [petitioner]. In the time period between May and October, 2003, when the victim was age ten or eleven, she, along with her sister and her friend, went to the [petitioner's] workplace to help him paint the interior of the building. The victim went upstairs to paint the office while her sister and her friend remained downstairs. The [petitioner] entered the office, where he kissed the victim, pulled down his pants, and asked the victim to perform fellatio on him. The victim complied, while the [petitioner], who was standing against the wall, guided her head. Before he ejaculated, the [petitioner] warned the victim and told her to swallow it. The victim again complied. The [petitioner] told the victim she was doing a 'good job.' The [petitioner] then pulled down the victim's shorts and began to perform cunnilingus on her for a couple of minutes, while looking to make sure no one was entering the room. The [petitioner] also penetrated the victim's vagina with his tongue.

"The [petitioner] later took the victim's sister and the victim's friend home, but he returned to his workplace with the victim where he continued to sexually assault her by inserting his fingers into her vagina. The [petitioner] told the victim that she was 'grown up and mature,' and he convinced the victim that the sexual assault was their secret. The [petitioner] also asked the

victim if she wanted to go to a movie theatre with him. The victim pretended to telephone her mother because she did not want to go with the [petitioner], and she told the [petitioner] that her mother said she could not go with him. On the basis of these facts, the state charged the [petitioner] with one count of sexual assault in the first degree and two counts of risk of injury to a child.

"On or about December 24, 2007, the victim's family had a Christmas party, which the [petitioner] and others attended. During the party, the victim went into the garage, which had an upstairs room with a bar, pool table, television and bathroom, to get a beverage, during which time she encountered the [petitioner]. When the [petitioner] walked by the victim, he slapped her buttocks. '[F]lustered and annoyed,' the victim retreated to her bedroom, where the [petitioner] appeared shortly thereafter. The [petitioner], who had been drinking but did not appear intoxicated, asked the victim to kiss him or to perform fellatio on him. The victim declined, but the [petitioner] began to rub her back and squeeze her buttocks. The [petitioner] also tried to convince the victim to go for a ride with him, but she refused and returned to the party. On the basis of these facts, the state charged the [petitioner] with one count of sexual assault in the third degree and one count of risk of injury to a child.

"On or about [December 22, 2008],[2] the victim's family again was hosting a Christmas party, which the [petitioner] and others attended. During the party, the victim was watching television in the room above the garage, when the [petitioner], who appeared to be intoxicated, entered the room and asked the victim to make him a cocktail. As she made the cocktail, the [petitioner] kept trying to get close to the victim, but she kept moving away. The victim was scared and just wanted the [petitioner] to let her go. When she tried to exit the room, the [petitioner], whom the victim described as a 'really big guy [who is] strong,' pinned her against the wall and began to run his hands down her body, kissing her and grabbing her chest, while holding both of her hands with one of his hands. The victim also testified that the [petitioner] digitally penetrated her vagina during this assault. The victim was afraid, especially because of the [petitioner's] size and the fact that she 'was a scrawny kid. . . .' She 'just . . . wanted help . . . [and] didn't want this to happen anymore.' On the basis of these facts, hereinafter referred to as the '2008 Christmas party incident,' the state charged the [petitioner] with one count of sexual assault in the first degree.

"On July 2, 2009, the victim, while staying with a friend's family due to a deterioration in her relationship with her family, confided in her friend's mother that the [petitioner] repeatedly had sexually abused her. A few days later, the friend's mother drove the victim to

the police station to report the sexual abuse. The victim made further disclosures to the police on August 27, 2009, and September 5, 2009.

"The [petitioner] was arrested and charged, by way of an amended information, with two counts of sexual assault in the first degree, one count of sexual assault in the third degree, and three counts of risk of injury to a child. The jury found the [petitioner] guilty of all charges with the exception of the count of sexual assault in the first degree that stemmed from the [December 22, 2008] Christmas party incident, for which the jury returned a verdict of not guilty. The court accepted the jury's verdict, rendered judgment of conviction on five counts, and imposed a total effective sentence of thirty years [of] incarceration, ten years of which were mandatory, followed by five years of parole with special conditions, and lifetime registration as a sexual offender." (Footnote added.) Id., 400–403.

The petitioner appealed from the judgment of conviction, which was affirmed by this court. Id., 400. Thereafter, the petitioner filed a petition for a writ of habeas corpus. The petitioner amended his petition three times and filed his third amended petition on February 20, 2018. In his third amended petition for a writ of habeas corpus, the petitioner asserted that his trial counsel, Attorney Robert Lacobelle, provided ineffective assistance. The following individuals who provided testimony at the habeas trial included: Linda H., the petitioner's mother; Gary H., the petitioner's stepfather; Theresa Charette, a friend of the victim's mother; Charles Stango, a supervising assistant state's attorney and prosecutor at the underlying criminal trial; Daniel Markle, the private investigator that was retained by the petitioner's trial counsel; and the petitioner's trial counsel. Following the trial, the habeas court, *Kwak, J.*, in a memorandum of decision, denied the petitioner's habeas petition. In doing so, the court concluded that the petitioner had failed to demonstrate that his trial counsel's assistance was ineffective and found that trial counsel's use of different trial strategies for alternate allegations was "highly reasonable and not indicative of deficient performance." The petitioner filed a petition for certification to appeal, which the habeas court granted. This appeal followed.

On appeal, the petitioner claims that the court improperly failed to conclude that his trial counsel was ineffective for (1) failing to present the testimony of four witnesses regarding the petitioner's whereabouts on one of the nights in question, (2) improperly referencing the complainant as the "victim" and failing to object or to request a curative instruction when the prosecutor did the same, and (3) failing to investigate properly an incident of uncharged misconduct. We disagree.

We begin by setting forth the applicable standard of

review and the law governing ineffective assistance of counsel claims. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 470, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, 571 U.S. 1045, 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013); see also *Bowens* v. *Commissioner of Correction*, 333 Conn. 502, 537–38, 217 A.3d 609 (2019).

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

I

The petitioner first claims that the court improperly rejected his claim that his trial counsel rendered ineffective assistance by failing to question the petitioner's mother, stepfather, and two family friends regarding the petitioner's whereabouts at the time of the December 24, 2007 family Christmas party. We disagree.

The following additional facts are relevant to this claim. The victim's family held two separate Christmas parties annually, one on December 22 for the neighborhood (neighborhood party) and another on December 24 for immediate family and close friends (family party). The petitioner was charged with sexual assault for his alleged conduct at two of these Christmas parties: (1)

the 2008 neighborhood party; and (2) the 2007 family party.

During the underlying criminal trial, the petitioner's mother and stepfather, Linda H. and Gary H., as well as two family friends, testified that they had not seen the petitioner at the 2008 neighborhood party. The petitioner subsequently was acquitted of sexual assault in the first degree stemming from the allegations regarding that date. Trial counsel did not question these four witnesses regarding the petitioner's whereabouts on the evening of the 2007 family party. He did, however, question three of these four witnesses as to the petitioner's whereabouts during the 2007 neighborhood party, despite the fact that no charges stemmed from that date. The petitioner asserts that trial counsel rendered constitutionally ineffective assistance because he failed to question these four witnesses regarding his whereabouts during the 2007 family party, and instead questioned them extensively about the 2007 neighborhood party.

At the habeas trial, the petitioner presented testimony from Linda H. and Gary H., both of whom stated that the petitioner did not attend the 2007 family party, nor any of the other parties in question. Notably, the petitioner did not present testimony from the two family friends, whom he claims should have been questioned at his criminal trial regarding his whereabouts on the day of the 2007 family party.[3] The petitioner speculates that the two family friends would have testified to his absence at the 2007 family party but failed to provide evidence at the habeas trial to support that contention. In addition, the petitioner's claim overlooks another important aspect of the state's case against him. Specifically, at the petitioner's criminal trial, the state presented the testimony of Detective Steven Young, who recounted the petitioner's police interview and detailed the petitioner's admission that he had attended the 2007 family party. Young testified that the petitioner provided an intricate account of the evening and offered an explanation for his allegedly accidental touching of the victim's buttocks, suggesting that he and the victim had been wrestling together. Thus, the petitioner not only acknowledged his presence at the 2007 family party, but his statement to the police also squarely contradicted the very testimony he now contends should have been presented by his trial counsel.

At the habeas trial, the petitioner's trial counsel testified that he decided not to question the four witnesses regarding the 2007 family party following the petitioner's acknowledgment to a law enforcement official that he had in fact attended the event. Trial counsel stated that such questioning could have jeopardized the petitioner's defense. Specifically, he feared calling into question the credibility of the witnesses who had testified to the petitioner's absence from the 2008 neighbor-

hood party. Trial counsel testified that he sought to discredit the victim's account of events by highlighting the inconsistencies between her testimony at trial and the statements that she had provided to law enforcement. Trial counsel also testified that he highlighted the purported lapses made by law enforcement officials while they investigated the victim's allegations.

In its memorandum of decision, the habeas court noted that, had trial counsel chosen to examine the four proposed witnesses regarding the 2007 family party, it would have served only to jeopardize the defense by tarnishing the credibility of those much-needed witnesses regarding the events of the 2008 neighborhood party. Moreover, the court found that the petitioner had failed to show that the testimony of the two family friends would have helped with his defense. The court additionally concluded that the testimony of Linda H. and Gary H. regarding the evening of the 2007 family party, as presented at the habeas hearing, left a period of several hours during which no witnesses could account for the whereabouts of the petitioner. This temporal gap on the evening of the 2007 family party, according to the court, would have allowed ample opportunity for the petitioner to attend the party in question unbeknownst to the witnesses.

In essence, the petitioner is claiming on appeal that trial counsel's decision not to have his mother and step-father attest to his alleged absence from the 2007 family party was objectively unreasonable; however, this premise is untenable. The petitioner presented no evidence at the habeas trial that anyone except for his parents would have attested to his absence from the 2007 family party. We cannot say that trial counsel's decision not to question the petitioner's parents about the petitioner's whereabouts during the 2007 family party was objectively unreasonable because the jury could have deemed them to be biased witnesses seeking to protect their son, especially when the parents' account would have been contradicted by the petitioner's own statements to law enforcement. A habeas petitioner can demonstrate that a trial counsel's decisions were objectively unreasonable only if there was no tactical justification for the course of action pursued at trial. See *Meletrich* v. *Commissioner of Correction*, 178 Conn. App. 266, 277–78, 174 A.3d 824 (2017), aff'd, 332 Conn. 615, 212 A.3d 678 (2019). "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 12, 242 A.3d. 107 (2020). As such, this court is required to "make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal quotation marks omitted.) *Rivera* v.

*Commissioner of Correction*, 70 Conn. App. 452, 456, 800 A.2d 1194, cert. denied, 261 Conn. 921, 806 A.2d 1061 (2002).

"The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 149 Conn. App. 681, 701, 89 A.3d 426 (2014), appeal dismissed, 321 Conn. 765, 138 A.3d 278, cert. denied sub nom. *Jackson* v. *Semple*, U.S. , 137 S. Ct. 602, 196 L. Ed. 2d 482 (2016). Additionally, "[w]here an alibi defense contains omissions for crucial time periods, the alibi is insufficient, and it is not deficient performance to fail to present that defense." *Meletrich* v. *Commissioner of Correction*, supra, 178 Conn. App. 279. In *Jackson* v. *Commissioner of Correction*, supra, 698, a claim of ineffective assistance of counsel was premised on counsel's failure to call several witnesses in support of an alibi defense. In upholding the habeas court's finding that counsel had not rendered deficient performance, this court ruled that if the testimony that counsel allegedly failed to elicit would not have accounted for the petitioner's whereabouts between crucial points in time, immediately before, during and after the alleged criminal incident had occurred, the testimony would have been unhelpful in establishing a complete alibi defense. Id. Thus, we concluded that counsel's failure to call witnesses to provide such testimony was not deficient performance. Id. Our cases instruct that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, supra, 281.

"[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 689. On the basis of the foregoing, the court properly concluded that the petitioner failed to sustain his burden of overcoming the presumption that counsel's actions were the result of sound trial strategy. We therefore conclude that the court properly determined that the petitioner failed to establish his claim that trial counsel's decision to refrain from questioning witnesses regarding the petitioner's whereabouts on the evening of the 2007 family party constituted deficient performance.

## II

The petitioner next claims that the court improperly

determined that he had failed to sustain his burden of proving that he was prejudiced by references to the complaining witness as the "victim" by his counsel and the state during his criminal trial. We disagree.

The following additional facts are relevant to our review of this claim. Prior to the commencement of trial, the petitioner's trial counsel filed a motion with the court to prohibit the use of the word "victim" by either party. The court granted the motion in limine and cautioned all parties to refrain from addressing the complainant as the "victim." During the course of the trial, however, both the prosecutor and the petitioner's trial counsel sporadically used the word "victim" when referencing the complainant in the presence of the jury. The prosecutor referred to the complainant as the "victim" on six occasions and trial counsel did so twice. Trial counsel did not object to the prosecutor's violation of the court order or request a curative instruction from the court.

In *State* v. *Cortes*, 276 Conn. 241, 249 n.4, 885 A.2d 153 (2005), our Supreme Court held that the trial court's reference to the complainant as the "victim" was inappropriate, as it implicitly suggested that the complainant had in fact been victimized by the defendant. Id. Later, in *State* v. *Warholic*, 278 Conn. 354, 369–70, 897 A.2d 569 (2006), the Supreme Court expanded its ruling in *Cortes* by cautioning "*the state* . . . against making excessive use of the term 'victim' to describe a complainant when the commission of a crime is at issue because prevalent use of the term may cause the jury to draw an improper inference that the defendant committed a crime against the complainant." (Emphasis added.) Id., 370 n.7. Although the court in *Warholic* concluded that the prosecutor's use of the word "victim" during closing argument did not amount to prosecutorial impropriety because the jury was likely to understand that the state's terminology was simply a reflection of the state's contention concerning the allegations proffered at the trial, the court clearly admonished the use of such terminology. Id., 370 and n.7; see also *State* v. *Williams*, 200 Conn. App. 427, 435, 238 A.3d 797 (prosecutor's relatively infrequent use of term "victim" did not constitute impropriety), cert. denied, 335 Conn. 974, 240 A.3d 676 (2020); *State* v. *Kurrus*, 137 Conn. App. 604, 621, 49 A.3d 260 (prosecutor's reference to complainant as "victim" on three occasions did not unduly influence jurors), cert. denied, 307 Conn. 923, 55 A.3d 566 (2012); *State* v. *Rodriguez*, 107 Conn. App. 685, 703, 946 A.2d 294 (prosecutor's sporadic use of term "victim" did not amount to impropriety), cert. denied, 288 Conn. 904, 953 A.2d 650 (2008). Thus, where the courts have deemed such behavior to be prevalent and chronic, they have determined that such references have invaded the propriety of the trial proceeding. See *State* v. *Thompson*, 146 Conn. App. 249, 271, 76 A.3d 273 (state's use of word "victim" on seven occasions

necessitating repeated court intervention was inappropriate), cert. denied, 310 Conn. 956, 81 A.3d 1182 (2013); *State* v. *Albino*, 130 Conn. App. 745, 762, 24 A.3d 602 (in cases where there is challenge as to whether crime occurred, repeated use of word "victim" is improper), aff'd, 312 Conn. 763, 97 A.3d 478 (2014).

Although the foregoing principles guide our review, the present case encompasses the complicating fact that, in addition to the state's use of the term "victim," the petitioner's trial counsel also referred to the complainant as the "victim." Although trial counsel appropriately sought a court order preventing such references and, although the majority of the time the complainant was referred to by her initials, as the trial progressed there were admitted transgressions, including by trial counsel. He represented that such references were unintentional but conceded that he neither objected to the state's use of the term nor requested curative instructions from the court.

As previously noted in this opinion, *Gonzalez* is clear that there are two prongs, performance and prejudice, to an analysis of an ineffective assistance of counsel claim. *Gonzalez* v. *Commissioner of Correction*, supra, 308 Conn. 470. "It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Emphasis omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 713, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008); see also *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 606, 103 A.3d 954 (2014). Thus, "[a]lthough a petitioner can succeed only if he satisfies both prongs, a reviewing court can find against a petitioner on either ground." *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 669, 159 A.3d 1112 (2017). As such, case law permits us to affirm a habeas court's decision on prejudice without examining the deficiency prong. Id.

In the present case, although both the state and trial counsel inappropriately referred to the complainant as the victim, neither did so consistently. Both parties predominately identified the witness either as the complainant or by use of her initials. There is simply no support for the petitioner's assertion that, but for trial counsel's use of the word "victim" on two occasions throughout the entirety of the trial proceeding, or his failure to object or to request a curative instruction after the prosecutor made similar references, it is reasonably likely that the outcome of the trial would have been different. This conclusion is buttressed by the fact that the petitioner in fact was acquitted of one of the charges against him. If the jury had been improperly influenced by these references to the victim, presumably it would not have acquitted the petitioner of one of the charges.

"To satisfy the prejudice prong, a claimant must dem-

onstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 626–27, 212 A.3d 678 (2019); see also *Johnson* v. *Commissioner of Correction*, 330 Conn. 520, 538, 198 A.3d 52 (2019). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 265, 112 A.3d 1 (2015). The critical question is "whether there is a reasonable probability that, absent the [deficient performance of counsel], the [fact-finder] would have had a reasonable doubt" concerning the petitioner's guilt. (Internal quotation marks omitted.) *White* v. *Commissioner of Correction*, 145 Conn. App. 834, 842, 77 A.3d 832, cert. denied, 310 Conn. 947, 80 A.3d 906 (2013).

After a thorough review of the entire record, we are not persuaded that the habeas court improperly concluded that the petitioner failed to demonstrate that he was prejudiced by any deficient performance of his trial counsel relating to references to the complainant as the victim because, as noted previously in this opinion, the petitioner was acquitted of one of the charges against him. Accordingly, this claim fails.

### III

Finally, the petitioner claims that the court improperly determined that his trial counsel did not render ineffective assistance by failing to investigate a claim of uncharged misconduct between the petitioner and the victim. We disagree.

The following additional facts are relevant to this claim. During the criminal trial and over trial counsel's objection, the state introduced misconduct evidence of additional sexual contact between the petitioner and the victim during a family ski trip at Okemo Mountain.

In light of that evidence, the petitioner claims that trial counsel rendered ineffective assistance by neglecting to interview and to procure the testimony of an alleged witness, Theresa Charette, who claimed that she had not seen the petitioner during the Okemo ski trip. The petitioner argues that, if called to testify, Charette would have so undermined the credibility of the victim's account of this event that the entirety of her trial testimony would have been irreparably tainted in the eyes of the jury.

During the habeas trial, however, trial counsel testified that the petitioner had admitted to him that he had attended the Okemo ski trip. That admission stands in firm opposition to the very testimony that the petitioner now claims trial counsel failed to investigate and to present at trial. As previously noted in this opinion, "[t]he failure of defense counsel to call a potential

defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, supra, 149 Conn. App. 701. Furthermore, "[d]efense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, supra, 178 Conn App. 278–79. The decision of the petitioner's trial counsel not to pursue testimony from a witness in an effort to rebut a claim that the petitioner had readily admitted as true cannot be deemed unreasonable or tactically unsound. We, therefore, conclude that the court properly rejected the petitioner's claim that his trial counsel's performance was constitutionally deficient as it related to the uncharged misconduct admitted against him.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] On appeal, the petitioner does not claim, as he did in the habeas court, that his counsel had a conflict of interest.

[2] The state's third amended information alleged that the second incident actually occurred at a Christmas party held on December 22, 2008, not December 24, 2008.

[3] The only testimony that the two family friends provided at the criminal trial was in reference to the neighborhood parties in 2007 and 2008.